IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ENCOMPASS INDEMNITY COMPANY, | ) | Civil Action No. 14-1725 |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | United States Magistrate Judge Cynthia Reed Eddy |
| LAUREN RACHEL TAKACS, | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

**Cynthia Reed Eddy, United States Magistrate Judge**

### I. Introduction

This is a declaratory judgment action initiated by Plaintiff Encompass Indemnity Company ("Encompass"). Encompass is seeking an Order from this Court declaring as a matter of law that it does not have a duty to defend or indemnify Defendant Lauren Rachel Takacs ("Takacs"), its insured, in a lawsuit filed against her in the Court of Court of Common Pleas for Allegheny County, Pennsylvania (hereafter referred to as "the underlying action"). According to Encompass, the allegations asserted against Takacs in the four corners of the amended complaint in the underlying action fall outside the scope of coverage provided under the applicable insurance policy between Takacs and Encompass. Presently before the Court is Encompass' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons that follow, the motion will be granted.[1]

---

[1] In accordance with 28 U.S.C. § 636, all parties have voluntarily consented to have the undersigned conduct any and all proceedings in this matter, including entry of final judgment. (Joint Stipulation to Consent to Magistrate Judge, ECF No. 9); *accord* Fed. R. Civ. P. 73. Furthermore, we have authority to hear this case pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and likewise have subject matter jurisdiction under 28 U.S.C. § 1332, as the requirements needed for diversity of citizenship

1

## II. Applicable Legal Standards

### A. Motion for Judgment on the Pleadings – Rule 12(c)

A party may file a motion for judgment on the pleadings "[a]fter the pleadings are closed, but early enough not to delay trial." Fed. R. Civ. P. 12(c). To prevail on such a motion, the movant must establish that "there are no issues of material fact, and that [it] is entitled to judgment as a matter of law." *E.I. DuPont de Nemours and Co. v. United States*, 508 F.3d 126, 132 (3d Cir. 2007) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)). In resolving a motion for judgment on the pleadings, a court may generally consider the pleadings and exhibits attached thereto, and any relevant matters of public record. *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F.Supp.2d 591, 595 (E.D. Pa. 2010) (footnotes omitted). Additionally, "a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012).

### B. Interpretation of Insurance Policies

"The goal of interpreting an insurance policy, like that of interpreting any other contract, is to determine the intent of the parties. It begins with the language of the policy." *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 163 (3d Cir. 2011) (citing *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)). Insurance policies are generally to be interpreted by a court, not a jury. *Madison*, 695 A.2d at 106. "A policy must be read as a whole and its meaning construed according to its plain language." *Meyer*, 648 F.3d at 163 (citations omitted).

---

are satisfied. Because the parties are in agreement as to its applicability, the Court will apply Pennsylvania law in resolving this matter.

The insurance company, as the author of the policy, bears the burden of drafting with precision; and thus, any ambiguous term must be construed in favor of the insured. *Id.* When a provision of the policy is clear and unambiguous, the court must give effect to that language. *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007). "Contractual terms are ambiguous 'if they are subject to more than one reasonable interpretation when applied to a particular set of facts.'" *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 293 (3d Cir. 2012) (quoting *Madison*, 735 A.2d at 106). A court "will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison*, 735 A.2d at 106 (citing *Steuart v. McChesney*, 444 A.2d 659, 663 (Pa. 1982)).

C. Duty to Defend and Duty to Indemnify

"Although the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage." *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997). The Pennsylvania Supreme Court has observed the following:

> [a]n insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings.... In determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay resulting judgment.... [T]he language of the policy and the allegations of the complaint must be construed together to determine the insurers' obligation.

*Baumhammers*, 938 A.2d at 290 (quoting *Gene's Rest. Inc. v. Nationwide Ins. Co.*, 548 A.2d 246, 247 (Pa. 1988)) (alterations in original).

It is "well-established precedent" in Pennsylvania "that an insurer's duty to defend and indemnify [are] determined solely from the language of the complaint against the insured." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896

3

(Pa. 2006). Moreover, "[t]he particular cause of action that a complaint pleads is not determinative of whether coverage has been triggered." *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). "Instead it is necessary to look at the factual allegations contained in the complaint." *Id.* (citations omitted); *see also Kvaerner*, 908 A.2d at 896 (finding that the lower court erred in looking beyond the factual averments made in the underlying complaint when assessing whether the insurer owed a duty to defend).

## III. Background[2]

### A. Underlying Action

On or around May 30, 2014, Brittany Arnett sued Takacs in the underlying action. Arnett amended her complaint on or around August 13, 2014. The amended complaint (hereinafter "the Arnett complaint") is the operative complaint in the underlying action.[3] Arnett alleges that she entered into a real estate transaction with Takacs in which Arnett agreed to purchase Takacs' home. Arnett claims that Takacs failed to disclose known problems with the home, including the presence of a problem with water penetration in the basement. According to Arnett, Takacs knowingly failed to disclose these problems in several subsections of paragraphs four and six of the Seller Disclosure Agreement, which Takacs provided to Arnett. The amended complaint consists of two counts.

In the first count, Arnett claims violation of Pennsylvania's Real Estate Seller Disclosure Law (RESDL), 68 Pa. C.S.A. § 7301 *et seq.* Arnett alleges that Takacs "had knowledge of, or reckless disregard for, the issues with water leakage, accumulation or dampness, and willfully or

---

[2] All of the background facts in this matter are undisputed for purposes of this motion. *See* (Takacs' Br. in Opp'n at 1, ECF No. 16) ("Plaintiff has accurately set forth the background in its Memorandum of Law in Support of its Motion for Judgment on the Pleadings.").

[3] The Arnett complaint is attached as an Exhibit to Encompass' complaint at ECF No. 1-2. It is also docketed at GD 14-009342 in the Court of Common Pleas of Allegheny County, Pennsylvania (Doc. 11).

4

negligently failed to disclose same to [Arnett]." (Arnett Compl. ¶ 22, ECF No. 1-2). According to Arnett, the purpose for this purported "intentional non-disclosure" of the material water defects was to induce Arnett to purchase the subject premises. (Id. ¶¶ 24-27). Arnett specifically asserts that her monetary damages in this count were proximately caused by Takacs' alleged non-disclosure of said material defects. (Id. ¶ 26).

In the second count, Arnett claims violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201, *et seq.* Here, Arnett likewise alleges that Takacs fraudulently misrepresented material facts in the Seller Disclosure Statement with respect to the material issues of water leakage. (Id. ¶ 31). Based on a report issued by "The Basement Guys," a waterproofing company, Arnett avers that the water intrusion problem existed for three to five years, (Id. ¶¶ 32-33). Takacs owned the property during this time period; specifically, four years prior to Arnett's purchase of the property. (Id. ¶ 33). In count two, Arnett again expressly asserts that Takacs intentionally made said misrepresentations in the Seller Disclosure Statement in order to induce Arnett to purchase the subject premises, and Arnett justifiably relied on said misrepresentations. (Id. ¶¶ 34-35). Due to these alleged misrepresentations, Arnett claims to have incurred monetary damages. (Id. 36).

B. Elite Home Policy

At all times relevant hereto, Takacs was the named insured on a Universal Security Policy No: 281513160 issued by Encompass. Said policy generally provided property and liability protection to Takacs for the duration of the policy, subject to certain enumerated terms, conditions, and exclusions. Included in the Universal Security Policy is an Elite Home Policy (hereinafter "the policy"), which is the focus of the instant dispute.

The policy provides personal liability coverage for claims brought against Takacs or any covered person for, *inter alia*, "**Property Damage**, caused by an *occurrence*," subject to various inapplicable exclusions.[4] Property Damage and occurrence are both defined terms in the policy.

"**Property Damage** means physical injury to or destruction of real property or tangible personal property including loss of use of the property."

"**Occurrence**" is defined, in relevant part, as an "event or series of related events resulting from continuous or repeated exposure to the same general conditions, that causes ... **property damage** during the policy period ..."

C. Procedural History of the Present Declaratory Judgment Action

Encompass initiated the instant action for declaratory judgment relief by filing a complaint on December 22, 2014. Encompass contends that the factual allegations asserted against Takacs in the underlying action are outside of the scope of coverage under the policy. Encompass therefore seeks an Order from this Court declaring that it does not have a duty to defend or indemnify Takacs in the underlying action. Takacs filed an answer to the complaint on March 9, 2015. The Court held a case management conference on April 20, 2015, resulting in the issuance of a case management order. Thereafter, Encompass filed the pending motion for judgment on the pleadings on May 15, 2015. Takacs responded by filing a brief in opposition on June 5, 2015, and Encompass filed a reply brief on June 29, 2015. Accordingly, the matter has been fully briefed and is ripe for disposition.

---

[4] The policy also provides personal liability coverage for claims against Takacs or any covered person for "**Personal Injury**" or "**Bodily Injury**" caused by an "*occurrence*," although this is not relevant to the present analysis.

6

## IV. Discussion[5]

Encompass argues that the term "Property Damage," as defined in the policy, is not implicated by the factual averments asserted by Arnett against Takacs in the underlying complaint. In support of this argument, Encompass directs the Court to *USAA Casualty Insurance Company v. Bateman*, 2008 WL 4761718 (E.D. Pa. 2008). Like the instant matter, *Bateman* involved a situation in which the insurer sought a declaratory judgment order that it did not have a duty to defend or indemnify its insured in a state court action in connection with the sale of the insured's home, who was being sued for misrepresentations as to the condition of the home in the seller disclosure agreement. The buyers asserted claims against the insured-seller for violation of Pennsylvania's RESDL and UTPCPL. The seller requested a defense and indemnification for defense fees from the insurer pursuant to her homeowner's insurance policy. The insurance policy at issue in *Bateman* contained a nearly identical definition of "Property Damage" as compared to the policy at issue in this case. In *Bateman,* the policy provided that "'Property damage' means physical damage to, or destruction of tangible property, including loss of use of this property." 2008 WL 4761718, *2. As discussed above, the policy here provides that "**Property Damage** means physical injury to or destruction of real property or tangible personal property including loss of use of the property."

In concluding that the allegations in the underlying lawsuit did not constitute "property damage" as defined by the insurance policy, *Bateman* noted that "[t]he acts in the underlying lawsuit amounted to a misrepresentation of the status of the home, whether it be intentional or negligent. At no point did [the insured-seller's] acts ever inflict damage on the home that was

---

[5] Encompass' primary argument is that the underlying action does not allege an "occurrence" as defined in the policy, and its alternative argument is that the underlying action does not allege "property damage" as defined in the policy. However, because the definition of "occurrence" specifically incorporates and depends upon the term "property damage," the Court will first resolve the issue as to whether the underlying action alleged "property damage."

7

not already in existence prior to the acts in question." *Id.* at *8. To that end, the court also found that the alleged misrepresentation did not alter the "tangible property."[6] Instead, "[t]he only harm that occurred was that the Underlying Plaintiffs did not purchase the home they expected to purchase;" which is not a basis for constituting "property damage" or concluding that "damage" occurred to "tangible property" under the policy. *Id.* The Court here finds the reasoning in *Bateman* persuasive, and thus adopts same herein. *Accord 21st Century N. Am. Ins. Co. v. Wolfington*, 892 F.Supp.2d 692, 698 (E.D. Pa. 2012) ("The Pennsylvania Supreme Court does not appear to have ruled directly on the question of whether claims for misrepresentations in home sales are covered claims under liability insurance policies. However, ... several other courts [both within the Third Circuit and outside the Third Circuit] have held that claims alleging fraudulent or negligent misrepresentation surrounding a home sale are not claims for 'property damage' under insurance policies ...").

The Court further notes that the Connecticut Appellate Court recently cited *Bateman* favorably, and provided the following concise and well-reasoned analysis:

> In the present case, the gravamen of the [third party buyer's] claim of negligent misrepresentation is that, in the course of selling the home, the [insured-seller] was required to submit to the [third party buyers] a residential property disclosure report. In that report, the [insured-seller] claimed that he had no knowledge of any problems relating to the property including water seepage, rot and water damage, water drainage problems, and driveway problems. The [third

---

[6] Expounding upon the meaning of "tangible property," *Bateman* quoted an excerpt authored by Judge Cercone of this Court as follows:

> The qualifying term "tangible" generally is understood to denote property that is physical and capable of being touched and perceived. "Physical injury" is understood to have occurred when the property is altered in appearance, shape, color or in other material dimension. Conversely, to the average mind, tangible property does not experience physical injury if that property suffers intangible damage, such as diminution in value as a result from the failure of a component ... to function as promised.

*USA Fin. Servs., Inc. v. State Farm Fire & Cas. Co.*, 2007 WL 2688720, *3 (W.D. Pa. 2007).

8

party buyers] relied on these representations and purchased the property on March 13, 2009. The [insured-seller's] representations were false or inaccurate, which the [third party buyers] discovered only after they purchased and occupied the property. The property suffered from preexisting conditions, problems, and defects including susceptibility to flooding, inadequate water drainage, mold, rot, and other uncorrected water damage. Although the [third party buyers'] alleged damages arose from these undisclosed conditions, problems, and defects, the gravamen of their claim is that they suffered economic and pecuniary damages as a result of the [insured-seller's] alleged misrepresentations which induced them to purchase the property. As in many of the cases previously discussed, the alleged conditions, problems, and defects existed prior to the [insured-seller's] alleged misrepresentations, and subsequent incidents causing damage after the [third party buyers] purchased the property were the result of those preexisting conditions, problems, and defects.

On the basis of our review of the record and relevant case law, we are persuaded that the court properly determined that the damages claimed by the [third party buyers] as a result of the [insured-seller's] alleged misrepresentations constituted economic or pecuniary losses, and not property damage within the ambit of the coverage of the policy. *See, e.g., Aluise v. Nationwide Mutual Fire Ins. Co.,* [218 W.Va. 498, 506, 625 S.E.2d 260 (2005)] ("damages flowing from misrepresentation ... have no basis [as] property damage; rather, the only cognizable damages from such torts are economic and contractual in nature and as such do not fall within the scope of coverage afforded by [homeowners] policies ...." [internal quotation marks omitted] ). The court, therefore, properly concluded that the [insurer] did not have a duty to defend the [insured-seller] under these circumstances.

*New London Cnty. Mut. Ins. Co. v. Sielski*, 159 Conn. App. 650, — A.3d —, 2015 WL 5255250, *6 (Conn. App. Sept. 15, 2015).[7]

*Sielski* noted that when faced with similar circumstances, the majority of courts have reached the same result. *See St. Paul Fire & Mar. Ins. Co. v. Lippincott*, 287 F.3d 703, 706 (8th Cir. 2002) ("The [insured-sellers'] negligent misrepresentations did not cause any property damage to the house. Neither did the [insured-sellers'] actions to conceal the cracks in the house cause any property damage to the house. The structural flaws in the house constitute tangible

---

[7] Although the claim asserted in *Sielski* was for negligent misrepresentation and the claims here against Takacs are for violations of specific Pennsylvania statutes, the analysis in *Sielski* is nevertheless applicable, given that we are to focus on the factual allegations of the underlying action instead of the particular causes of action pled. *See Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999).

9

property damage, but these flaws predate the occurrence of concealments and misrepresentations by which the [insured-sellers] incurred liability. The [third party buyers'] judgment covered the intangible losses incurred when the [third party buyers] relied to their economic detriment upon the misrepresentations. These damages are pecuniary in nature and are not property damage within the meaning of the ... insurance policies.") (citing *State Farm Fire & Cas. Co. v. Brewer*, 914 F.Supp. 140, 142-43 (S.D.Miss.1996) (noting that courts are "virtually unanimous" in holding "that damages flowing from misrepresentation and/or fraud have no basis in property damage; rather, the only cognizable damages from such torts are economic and contractual in nature and as such do not fall within the scope of coverage ..."); *Bush v. Shoemaker-Beal*, 26 Kan.App.2d 183, 987 P.2d 1103, 1104-05 (1999); *Qualman v. Bruckmoser*, 163 Wis.2d 361, 471 N.W.2d 282, 285 (1991)); *State Farm Lloyds v. Kessler*, 932 S.W.2d 732, 737 (Tex.App.1996) ("The [third party buyers'] petition ... describe[s] drainage and foundation problems. But those problems are not 'property damage' for which the [insured-sellers] are legally liable because the [third party buyers] do not assert that the [insured-sellers] injured the property, destroyed the property, or caused the resulting loss of use. Instead, the [third party buyers] allege that the [insured-sellers] misrepresented the problems. The [insured-seller's] alleged misrepresentations did not cause the drainage and foundation problems; those problems existed before negotiations began."); *Aluise v. Nationwide Mut. Fire Ins. Co.*, 218 W.Va. 498, 501, 506–507, 625 S.E.2d 260 (2005) (allegations of misrepresentations as to cracks in foundational walls and moisture buildup constituted economic losses, not covered property damage); *see also Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 876 (8th Cir. 2011) ("[T]he notion that [the third party buyer's] reference to the property's condition converts her claim into one seeking recompense for 'property damage' is

implausible, particularly in light of her allegations that she was injured by misstatements concerning the property's value.").[8]

Here, a fair reading of the Arnett complaint in the underlying action leads to the conclusion that the material issues pertaining to the house were already in existence at the time of the sale. Arnett has alleged facts that the water leakage issues with her house existed when Takacs owned it, Takacs knew of said issues, Takacs made intentional misrepresentations regarding said issues, Arnett relied upon the misrepresentations in purchasing the house, and Arnett never would have purchased the house had she known of the issues. Indeed, in both counts asserted against Takacs in the underlying action, Arnett unequivocally alleges that the misrepresentations made prior to the closing caused her damages. Notably, however, the alleged misrepresentations did not create the physical injury to the home, i.e., the issues with water leakage and dampness. Additionally, Arnett did not allege that these purported misrepresentations destroyed any tangible personal property.

Takacs implies that she is entitled to discovery with respect to whether the "house was in the same state after the sale as it was at the time of the sale and [whether] the only harm that occurred was that the buyer did not purchase the home she expected to purchase." (Takacs' Br. in Opp'n at 3, ECF No. 16). As previously explained in the section describing the applicable legal standards herein, however, we are confined solely to the factual allegations asserted in the four corners of the Arnett complaint. *See Kvaerner*, 908 A.2d at 896; *Haver*, 725 A.2d at 745. Given that Arnett has alleged that the material issues existed before the sale occurred and Takacs

---

[8] *Sielski* acknowledged, however, that a minority of courts have held that in such situations, property damage has adequately been alleged. *See Sielski*, 2015 WL 5255250, at *5 n. 5 (citing *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 47 (Mo. App. 1998); *USAA Cas. Ins. Co. v. McInerney*, 960 N.E.2d 655, 662 (Ill. App. 2011); *Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540 (Md. 1996)). Nevertheless, the Court in *Sielski* declared that it was "not persuaded by the reasoning of these cases;" we take the same position.

11

was aware of same, for purposes of resolving this motion, it is irrelevant if the house is not in the same condition today as it was at the time of the sale or if said issues have since worsened. The fact remains that Arnett did not aver that Takacs' alleged misrepresentations caused the material issues with the home. As such, any further deterioration of the property's condition since the time of the sale likewise cannot be attributed to the alleged misrepresentations; it would rather be "the result of those preexisting conditions, problems, and defects." *Sielski*, 2015 WL 5255250, at *6. This conclusion is consistent with the relevant case law holding that such alleged misrepresentations constitute economic or pecuniary damage, but not property damage.

Takacs' next argument that the Arnett complaint could be construed to allege that Arnett would suffer loss of use of the property during the time required to effectuate the necessary repairs is a strained reading of the allegations therein. Simply put, there are no factual allegations supporting this position. Moreover, even if the Arnett complaint did contain those allegations that she will suffer the loss of use of the property, which it does not, they still would not constitute "property damage" under the policy because, as set forth above, the misrepresentations did not cause any "physical injury to or destruction of real property or tangible personal property." Instead, the Arnett complaint's factual allegations with regard to Takacs' alleged misrepresentations can only be construed as affecting the property's value, *see* (ECF No. 1-2 ¶ 32), which is intangible economic damage. *See USA Fin. Servs.*, 2007 WL 2688720, *3; *Kessler*, 932 S.W.2d at 738 ("Even if some economic damages could fall within the definition of property damage ..., courts uniformly hold that those resulting from misrepresentations do not.").

Takacs' final argument that the allegations in the Arnett complaint constitute "property damage" because Arnett alleges at paragraph 43 that Arnett suffered "property damage and

12

monetary loss" is also misplaced. Paragraph 43 is not asserted against Takacs. Rather, it is asserted against the home inspector for failing to discover material defects with the property's water leakage. As set forth above, Arnett's allegations against Takacs arise solely from the purported misrepresentations as to known defects in the property already in existence at the time of the sale, which are alleged to have only caused economic damage to Arnett personally and not damage to the property itself.

In conclusion, "to find coverage existed in this case would be to find that based on an act of sale, a homeowner's insurance becomes the warrantor of the condition of the insured property." *Wolfington*, 892 F.Supp.2d at 699 (quoting *Lawyer v. Kountz*, 716 So.2d 493 (La.App.1998)). The factual allegations in the underlying action do not constitute "Property Damage" in accordance with that term's definition in the policy. Accordingly, Encompass does not have a duty to defend or indemnify Takacs in the underlying action.[9]

## V. Conclusion

Based on the foregoing, Encompass' motion for judgment on the pleadings is granted. An appropriate Order follows.

September 30, 2015

By the Court:

/s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: All counsel of record via CM-ECF

---

[9] As such, the Court need not address Encompass' other argument that the factual averments in the underlying action do not constitute an "occurrence" as defined in the policy.

13

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ENCOMPASS INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>LAUREN RACHEL TAKACS,<br><br>Defendant. | Civil Action No. 14-1725<br><br>United States Magistrate Judge<br>Cynthia Reed Eddy |

## ORDER

AND NOW, this 30th day of September, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED that Plaintiff Encompass Indemnity Company's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED.

It is further ORDERED that Plaintiff Encompass Indemnity Company has no duty to defend Defendant Lauren Rachel Takacs in Docket No. GD-14-009342 filed in the Court of Common Pleas of Allegheny County, Pennsylvania.

It is further ORDERED that Plaintiff Encompass Indemnity Company has no duty to indemnify Defendant Lauren Rachel Takacs in Docket No. GD-14-009342 filed in the Court of Common Pleas of Allegheny County, Pennsylvania.

It is further ORDERED that the Clerk of Court shall mark this CASE CLOSED.

By the Court:

/s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: All counsel of record via CM-ECF